UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MALLOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24 CV 506 CDP |
| | ) | |
| TRILEAF CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Deborah Malloy brings this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, alleging that defendant Trileaf Corporation and its president, defendant T. Scott Muschany, unlawfully terminated her employment as Director of Human Resources in retaliation for her reporting to Muschany and to the United States Department of Labor (U.S. DOL) that Trileaf misclassified salary-exempt employees and improperly managed its policy for Paid Time Off (PTO).   Malloy also brings state-law claims of false imprisonment and intentional infliction of emotional distress against Muschany.[1]   For the reasons set out below, I will grant defendants' motion for summary judgment on Malloy's FLSA claim and deny as moot their separate partial motion for summary judgment

---

[1] I previously dismissed Malloy's additional state-law claims of wrongful discharge and abuse of process for failure to state a claim.   (*See* ECF 16, Memo. & Ord, May 22, 2024.)

on Malloy's claim for FLSA damages.   I will also grant defendant Muschany's motion for summary judgment on Malloy's state-law claims, as Malloy concedes that Muschany is entitled to judgment as a matter of law on those claims.

Defendants also move for sanctions against Malloy, alleging that she deliberately engaged in egregious misconduct throughout the course of discovery in this case, including providing false sworn interrogatory answers and deposition testimony, which resulted in defendants expending extensive time and effort in investigating and securing accurate information.   Defendants contend that Malloy's deceitful conduct prejudiced them by impeding their ability to obtain information relevant to their defense.   Defendants request that I strike Malloy's pleadings and dismiss the case with prejudice.   They also seek recovery of attorney's fees incurred because of Malloy's discovery misconduct, including fees relating to their motion for sanctions.   I need not dismiss the case as defendants request, as they have demonstrated that they are entitled to summary judgment on Malloy's claims.   The motion for sanctions is not moot, however, as it seeks sanctions relief beyond dismissal.   I will enter a separate Order on that motion, which remains pending.

## I.  Legal Standard

Summary judgment is appropriate if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."   *Meyer v.*

*McKenzie Elec. Coop., Inc.*, 947 F.3d 506, 508 (8th Cir. 2020); Fed. R. Civ. P. 56(a).   The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial.   *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).   Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute.   Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).

In determining a motion for summary judgment, I consider only those facts that can be supported by admissible evidence.   Fed. R. Civ. P. 56(c); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1175-76 (E.D. Mo. 2005).   Testimony that would not be admissible is ignored.   *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003).   Accordingly, speculation, personal opinion, and legal conclusions are not "facts" upon which a party may rely for summary judgment purposes.   *See Benford v. Grisham*, No. 1:18CV5 JMB, 2020 WL 569871 (E.D. Mo. Feb. 20, 2020).   *See also* Fed. R. Civ. P. 56(c)(4) (a declaration used to support or oppose a motion for summary judgment must be made on personal knowledge and set out facts that would be admissible in evidence).

I view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor.   *Scott v. Harris,* 550 U.S. 372, 379 (2007).   A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson*, 477 U.S. at 248.   The substantive law determines which facts are critical and which are irrelevant.   *Id.*   Only disputes over facts that might affect the outcome will properly preclude summary judgment.   *Id.*

Under Local Rule 4.01(E), moving parties must include a Statement of Uncontroverted Material Facts with their memorandum, with citations to the record establishing each relevant fact.   The Local Rule also requires that every memorandum in opposition "must be accompanied by a document titled Response to Statement of Material Facts [that] set[s] forth each relevant fact as to which the party contends a genuine issue exists."

> The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies.   The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts.   *All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party*.

*Id.* (emphasis added).   Here, in her Response to Defendants' Statement of Material Facts, Malloy "admits the material facts" defendants assert in their Statement. (ECF 75, Pltf's Resp. to Stmt. of Mat. Facts Re Count II.)   As a result of that

expressed admission, I deem as admitted the facts set out in defendants' Statement of Uncontroverted Material Facts (ECF 53).   *See Ridpath v. Pederson,* 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material facts, it was deemed admitted under E.D. Mo. L.R. 4.01(E)); *see also Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense.") (internal quotation marks and citation omitted).   Although Malloy submitted her own Statement(s) of Material Facts she claims defendants "omitted" from their Statement (*see* ECF 72, 79), her proffer does not create genuine issues of material fact sufficient to preclude summary judgment.

## II.   Evidence Before the Court on the Motion

Trileaf hired Malloy as its Director of Human Resources on November 21, 2022.   Malloy was a salaried employee and reported directly to Muschany, Trileaf's CEO.   As the Director of HR, Malloy's job duties included ensuring legal compliance throughout HR management and reporting compliance information to Muschany relating to state and federal wage laws, such as the classification of salary-exempt employees.

Malloy states that within the first month of her employment – in November or December 2022 – she spoke with Muschany and informed him that Trileaf could

not classify all its employees as salary-exempt, to which Muschany responded that that was how it was always done.[2]   Malloy did not have any other conversation with Muschany about Trileaf's classification of its employees.   In January 2023, Malloy reported Trileaf's practice of classifying all employees as exempt to the Missouri Department of Labor (Missouri DOL), who advised her to contact the U.S. DOL.

Thereafter, Malloy did not contact any department of labor until May 4, 2023, when she made two calls to the Missouri DOL – to again report on the exempt classification status of all employees and to also report an issue she had with Trileaf requiring her to log PTO for days in April 2023 when she was hospitalized.   Malloy also made two calls to the U.S. DOL on May 4.   Between May 5 and May 17, she made five additional calls to the U.S. DOL.   Shortly after the May 17 call, Malloy informed Muschany that, per the U.S. DOL, she was not required to take PTO for the days she was hospitalized.[3]   On May 22 and June 12, 2023, Malloy called the U.S. DOL to advise that she was gathering information to file a complaint.   Malloy does not recall telling Muschany of those calls.   Malloy

---

[2] Muschany denies that this conversation took place.   (ECF 79-1, Muschany Dep. at dep. pp. 45, 97-99.)   For purposes of their summary judgment motion, however, defendants do not dispute Malloy's assertion that it did.   (ECF 53 at p. 2, n.1.)

[3] Muschany denies that this conversation took place.   (ECF 79-1 at dep. p. 79.)   For purposes of their summary judgment motion, however, defendants do not dispute Malloy's assertion that it did.   (ECF 53 at p. 2, n.1.)

never filed a formal complaint against Trileaf or Muschany with either the Missouri DOL or the U.S. DOL.

On the morning of Saturday, July 22, 2023, Dot Walker, a Trileaf accounting employee, entered the Trileaf offices and found a stack of papers on her desk that was not there when she left work the night before.[4]   The papers comprised confidential HR-related documents and handwritten notes by Muschany, including the password for Trileaf's credit card and notes taken during an employee meeting.   Muschany's notes had been removed from within stacks of paper that were on his desk in his office.   The HR-documents had been removed from Malloy's office, which was usually locked.   Through investigation, Muschany obtained information from the building manager showing that Malloy's code was used to enter the building at 9:35 p.m. on Friday, July 21.   The code of another individual was used to enter the building at 5:45 p.m. on July 21, but that person did not have access to the floor where Trileaf's offices were located.

On Monday, July 24, 2023, Muschany asked Malloy to come into his office whereupon he showed her the papers that were found on Walker's desk on July 22, and he told her that he had information that her code was used to access the building after hours on July 21.   Muschany expressed great concern that

---

[4] Malloy testified that Walker worked almost every weekend.   (ECF 79-2, Malloy Dep. at dep. p. 194.)

documents were removed from his office and that sensitive documents that only Malloy had access to and bore responsibility to secure were included in the stack of papers.   Malloy admitted to Muschany that she entered Trileaf's office the night of July 21, but she denied being in his office or having anything to do with the papers found on Walker's desk.   Malloy told Muschany that she came into the office only to retrieve her backpack and wallet that she had left at the office that day.   Malloy was not in the Trileaf office during the workday on July 21, 2023, however, having taken 6 hours of PTO and 2 hours of UPTO (unpaid time off) that day.

On July 25, 2023, the day after Muschany met with Malloy regarding the found stack of papers, Malloy did not come into the office.   Understanding that Malloy was working from home, Muschany emailed her through her work account at 11:58 a.m., stating that he would like to go over some information with her and requesting that they set up a telephone call for 1:00 p.m.   Malloy responded at 12:04 p.m. that she was "headed to the doctor" and would call after the appointment.   At 12:06 and 12:08 p.m., respectively, Muschany replied by asking what time Malloy would be available for a call, and he suggested that they talk "now."   Malloy did not respond to those emails.   Malloy never called Muschany on July 25.   At 8:12 p.m. that night, Malloy emailed Muschany from her personal email account, stating "I was not able to contact you today . . . ."   In response,

Muschany advised Malloy that, after several failed attempts to speak to her, Trileaf had terminated her employment earlier that day at 1:30 p.m.

In a letter to Malloy dated July 31, 2023, and signed by Muschany, Trileaf confirmed that Malloy's employment was terminated effective July 25 for several reasons, including:   failure to properly secure highly sensitive personnel information; failure to properly administer office security by leaving former employees with building access after their employment ended; consistently arriving at the office late or leaving early without completing responsibilities; consistently failing to attend weekly meetings; recommending to hire and hiring a person with whom she had a close relationship without disclosing the relationship, and then lying about the relationship when discovered; and cancelling her own background check as well as that of another employee, contrary to company policy.[5]

## IV.   Discussion

A.    <u>State-Law Claims Against Muschany</u>

In Counts III and IV of her complaint, Malloy claims that Muschany falsely imprisoned her by locking her in his office against her will and intentionally

---

[5] In addition to the reasons set out in the letter, at the time Muschany decided to terminate Malloy's employment on July 25, he also considered Malloy's miscommunication of PTO policy to Trileaf employees, providing incorrect information on Trileaf's disability policy, and failure to timely respond to employee inquiries on health care coverage.   (ECF 79-1 at dep. pp. 35-39.)

inflicted emotional distress by that conduct.   In response to Muschany's motion for summary judgment on those claims, Malloy concedes that there are no material facts in dispute sufficient to provide her relief under Missouri law.   (*See* ECF 80.) Given that concession, I will grant Muschany's motion for summary judgment on Counts III and IV of the complaint.

B.    FLSA Claim

Malloy's remaining claim (Count II)[6]  is an FLSA claim against Trileaf and Muschany wherein Malloy asserts that defendants unlawfully terminated her employment in retaliation for her engaging in protected conduct, that is, her complaints regarding Trileaf's salary-exempt classifications and PTO policy.

The FLSA sets forth employment rules "concerning minimum wages, maximum hours, and overtime pay."   *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011); 29 U.S.C. §§ 201, *et seq*.   The FLSA contains an antiretaliation provision forbidding employers

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act], or has testified or is about to testify in such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).   The scope of the statutory term "filed any complaint"

---

[6] Counts I and V of the complaint were dismissed on May 22, 2024, for failure to state a claim. *See* n.1, *supra*.

includes oral as well as written complaints. *Kasten*, 563 U.S. at 4; *Shrable v. Eaton Corp.*, 695 F.3d 768, 771 (8th Cir. 2012).

Where, as here, there is no direct evidence of retaliation, I undergo the familiar burden-shifting analysis established by *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), when addressing a claim of retaliation under the FLSA. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019). To establish a prima facie case, Malloy must show:  1) she engaged in protected activity under the FLSA, 2) an adverse employment action was taken against her, and 3) a causal connection between the two events. *Id.*  If Malloy meets her burden of establishing a prima facie case, defendants have the burden of articulating a legitimate, nonretaliatory reason for the adverse employment action. If defendants meet that burden, then Malloy has the burden to produce evidence that the defendants' proffered nonretaliatory reason is pretext for retaliation. *Id.* Malloy at all times bears the burden of persuasion. *Id.*

   1. *The FLSA Does Not Protect Malloy's Complaints Regarding PTO*

The FLSA establishes minimum standards for wages, hours, and employment conditions to safeguard workers from unfair labor practices. *See* 29 U.S.C. §§ 201-219.  It imposes minimum-wage requirements, guarantees overtime pay for eligible employees who work more than 40 hours in a workweek, regulates child labor and the labor of other protected employees (*e.g.*, students, the

handicapped, etc.), and provides exemptions from the minimum-wage/maximum-hour requirements for defined employees. *Id.* As set out above, § 215(a)(3) prohibits an employer from retaliating against employees who assert their rights under the FLSA.

The plain language of the FLSA does not require or regulate PTO nor includes PTO as a part of an employee's salary. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 762-63 (3d Cir. 2023). And Malloy's complaints to Muschany and the departments of labor regarding Trileaf requiring her to take PTO for her days of hospitalization do not relate to FLSA's minimum-wage, maximum-hour, or protected-status requirements. *See Norcom v. Novant Health, Inc.*, No. 3:20-cv-00673-RJC-DCK, 2022 WL 1710949, at *5-6 (W.D.N.C. Nov. 22, 2022) (listing cases). Accordingly, because Malloy's PTO complaints do not relate to matters that fall within the FLSA's protections, it cannot be said that those complaints constituted statutorily protected activity under the FSLA. Malloy's FLSA retaliation claim arising out of her PTO complaints therefore fails. *Birchfield v. Compass Health Network*, No. 4:24-cv-01575-SRC, 2025 WL 1454466, at *4 (E.D. Mo. May 21, 2025).

2. *Defendants Entitled to Summary Judgment on Malloy's Claim Relating to Her Conversation with Muschany Regarding Exempt Status*

Defendants contend that Malloy's November-December 2022 conversation with Muschany regarding Trileaf's exempt classification of its employees was not

protected activity under the FLSA because Malloy acted within her role as HR Director during the conversation, and not as an aggrieved employee. Although Malloy's role as HR Director does not by itself remove that conversation from FLSA protection, I agree with defendants that the nature and context of that conversation shows that it did not constitute protected activity.

To engage in protected activity under the FLSA as Malloy claims here, she must have made a "complaint." *Cf. Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (an affirmative complaint triggers the antiretaliation provision of the FLSA). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14.

Here, as HR Director, Malloy met with Muschany in November-December 2022 and spoke with him about Trileaf's classification of all employees as exempt, reporting her belief that that could not be done. Malloy characterizes that conversation as her "raising concerns" to Muschany regarding the classification. (ECF 78, Malloy Memo. in Oppos. at p. 2.) No other conversation took place between Malloy and Muschany regarding Trileaf's exempt classification of its employees.

It is undisputed that one of Malloy's duties as Trileaf's HR Director was to

report compliance information to Muschany relating to state and federal wage laws.   In that context, when Malloy made her report to Muschany regarding her belief that Trileaf could not classify all its employees as salary exempt, it cannot be said that that report alone – made within Malloy's role as HR Director – was an assertion of FLSA rights so sufficiently clear and detailed that Muschany understood that Malloy was calling for protection of those rights.   In view of the content and context, Malloy's expressed concern with nothing more does not give rise to an FLSA complaint protected by the antiretaliation provision of § 215(a)(3). *See Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017) (manager's merely voicing concerns on pay issues "does not constitute sufficient notice that the manager is asserting rights.").   To hold otherwise would transform every meeting with an HR director, supervisor, manager, etc., who reviews and questions the applicability of HR policies into an FLSA complaint.   *See Spencer v. Barton Cnty. Ambulance Dist.*, No. 16-06083-CV-SW-RK, 2017 WL 7036658, at *5 (W.D. Mo. Sept. 13, 2017).

Even if Malloy's November-December 2022 conversation with Muschany can be considered an FLSA complaint, it still would not fall within the purview of a retaliation claim because neither Trileaf nor Muschany took adverse action against Malloy for having that conversation.   *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 829 (8th Cir. 2013).   Malloy's employment was terminated in July 2023

– eight months after her conversation with Muschany.   The Eighth Circuit has "expressed doubt" whether a plaintiff may establish a prima facie case of retaliation when the termination occurs several months after the protected activity. *See Shrable*, 695 F.3d at 771 (six months).   On the record before the Court, there is nothing to alleviate that doubt here.

Accordingly, to the extent Malloy claims that Trileaf terminated her employment in July 2023 in retaliation for her November-December 2022 conversation with Muschany regarding Trileaf's exempt classification of its employees, Malloy fails to make a prima case of retaliation given that that conversation did not constitute a complaint under the FLSA and, even if it did, there is no causal connection between that conversation and her termination eight months later.   Defendants are therefore entitled to summary judgment on the claim.

### 3. *Defendants Entitled to Summary Judgment on Malloy's Claim Relating to Complaints to U.S. DOL Regarding Exempt Status*

On May 17, 2023, Malloy told Muschany that she had called the U.S. DOL and, according to Malloy, Muschany seemed to ignore her.   Although there is no dispute that Malloy did not discuss the exempt classification issue with Muschany after their November-December 2022 meeting, I will assume for purposes of this discussion that Muschany could have associated Malloy's call to the U.S. DOL with her expressed concern regarding the exempt classification.   Because "the

FLSA protects an employee when an employer mistakenly believes that she has engaged in protected activity," *Fezard v. United Cerebral Palsy of Cent. Ark.*, 809 F.3d 1006, 1012 (8th Cir. 2016), I consider Muschany's possible belief that Malloy discussed Trileaf's exempt classification with the U.S. DOL on May 17 sufficient to give rise to FLSA protections, even if Malloy did not actually have that discussion.

Malloy's termination came more than two months after she reported to Muschany on May 17 that she had talked to the U.S. DOL.   With nothing more, that two-month lag between events is too long to establish causation.   *See Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 924-25 (8th Cir. 2014) (one- to two-month lag).   Giving Malloy all benefit of the doubt, and assuming without deciding that Muschany was aware of the additional calls Malloy made to the U.S. DOL later in May and in June, defendants have nevertheless articulated and presented evidence of legitimate nondiscriminatory reasons for terminating Malloy's employment, and Malloy has failed to present any evidence showing that those reasons are pretext for retaliation.

The undisputed evidence shows that Muschany was the decisionmaker in Trileaf's decision to terminate Malloy's employment.   The undisputed evidence also shows that at the time Muschany decided to terminate Malloy's employment – that is, July 25, 2023, at 1:30 p.m. – he had before him evidence that Malloy had

entered Trileaf offices after hours for a stated reason that was not supported by
work records and that highly sensitive and confidential documents (some of which
only Malloy had access to and was responsible for securing) were found in an open
area of the office the morning after Malloy's after-hours visit.   Defendants'
evidence shows that based on Malloy's suspicious behavior in accessing the office
after hours and concocting a false story to justify her presence, Muschany
reasonably and in good faith believed that Malloy removed the confidential and
sensitive documents from his office and left those documents and other
confidential HR documents out in the open, which justified her termination.
"[A]n employer's belief that the employee committed misconduct is a legitimate,
non[retaliatory] reason for adverse action," *Richey v. City of Independence*, 540
F.3d 779, 784 (8th Cir. 2008), as is an employee's misrepresentations to her
employer, *Wood*, 705 F.3d at 830-31.

Malloy argues that defendants' proffered reason is pretext for retaliation
because she told Muschany that she did not know anything about the confidential
documents and that she believed the documents were "planted."   (ECF 78, Malloy
Memo. in Oppos. at p. 10.)   An employee's denials of and justifications for
alleged misconduct, however, are not evidence of pretext.   "The question is
whether [the employer's] articulated reasons for discharge were a pretext for
retaliation, not whether appellant actually did what [s]he was accused of doing or

whether discharge was warranted."  *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1035-36 (8th Cir. 2005) (citing *Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 989 (8th Cir. 1999) (employee's denial that she did what employer accused her of doing, standing alone, is not evidence that employer fabricated charge and does not establish pretext)).

Moreover,

> [i]f an employer, in explaining a termination, says it believed that the employee violated company rules, then proof that the employee never violated company rules does not show that the employer's explanation was false.   That proof shows only that the employer's belief was mistaken.   To prove that the employer's explanation was false, *the employee must show the employer did not truly believe that the employee violated company rules.*

*Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1003 (8th Cir. 2012), *quoted approvingly in Cross v. United Parcel Serv., Inc.*, No. 21-3819, 2023 WL 3858611, at *1-2 (8th Cir. June 7, 2023) (emphasis in *Cross*).   Malloy presents no evidence that defendants did not truly believe that she was responsible for removing sensitive documents from Muschany's office and failing to secure other confidential documents for which she bore responsibility.   Even if someone other than Malloy actually retrieved the documents and left them in an unsecured area, defendants' mistaken belief that it was Malloy who engaged in that misconduct does not demonstrate pretext.   *Cross*, 2023 WL 3858611, at *2; *see also Richey*, 540 F.3d at 784 ("[I]f an employer honestly believes that an employee is

terminated for misconduct, but it turns out later that the employer was mistaken about whether the employee violated a workplace rule, the employer cannot be liable" for retaliation.).

Although defendants' summary judgment motion proffers no other reason for Malloy's discharge, Malloy asserts in her opposition brief that she also disputes the reasons stated in Trileaf's letter of termination.   (*See* ECF 78, Malloy Memo. in Oppos. at p. 10.)   In addition to Malloy's failing to secure sensitive personnel information, that letter described Malloy's several other failings as a Trileaf employee, including additional security issues, unaccountability in maintaining office hours and completing her work, failing to attend weekly meetings, deceit regarding employment of a close relation, and cancelling background checks contrary to company policy.   An employee's misrepresentations to her employer and repeated failures to perform job duties are legitimate, nonretaliatory reasons for termination, *see Wood*, 705 F.3d at 830-31, as are poor work performance and poor attendance, *Hopper v. Hallmark Cards, Inc.*, 87 F.3d 983 (8th Cir. 1996).

In challenging the reasons set out in Trileaf's letter, Malloy argues that she was not deceitful about hiring a close relation, *i.e.*, her daughter, and that Muschany approved that hiring.   (ECF 79-3, Malloy Dep. vol. II at pp. 105-07.) That challenge, however, has no bearing on defendants' other legitimate, nonretaliatory reason(s) for termination and therefore is not significant enough to

give rise to a material issue for trial.  *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 940-41 (8th Cir. 2021) (credibility issue on some details not significant where employer had other sufficient information to reasonably believe that plaintiff violated company policy); *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954-55 (8th Cir. 2012) (unresolved fact question on whether plaintiff lied to employer not material as long as employer had good faith basis for discharge).   To the extent Malloy also argues that defendants failed to provide records showing that her attendance at work or at meetings was unsatisfactory, Muschany's sworn deposition testimony that Malloy's attendance issues factored into his decision to terminate her (*see* ECF 79-1 at dep. pp. 33-35) is sufficient evidence to support and articulate that reason.   Fed. R. Civ. P. 56(c)(1)(A) (deposition testimony can support an assertion that a fact cannot be genuinely disputed).   As Malloy has failed to produce any evidence rebutting that legitimate, nonretaliatory reason for her termination, she cannot demonstrate pretext.  *See Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir. 2021) (to demonstrate pretext, plaintiff "must *offer sufficient evidence* for a reasonable trier of fact to infer discrimination") (emphasis added); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995 (8th Cir. 2011) ("To rebut the legitimate, nondiscriminatory reasons set forth by [defendant-employer], [plaintiff] *must point to enough admissible evidence* to raise genuine doubt as to the legitimacy of the defendant's motive[.]") (emphasis added); *Krenik v. County*

*of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995) (defendant-employer entitled to summary judgment where plaintiff failed to present any evidence to support a finding of pretext).

Regardless, to prove pretext on any proffered reason, Malloy must "*both* discredit the asserted reason for the adverse action *and* show the circumstances permit drawing a reasonable inference that the real reason for the adverse action was retaliation." *King v. Guardian ad Litem Bd.*, 39 F.4th 979, 987 (8th Cir. 2022) (emphasis added). *See also Gibson v. American Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012). Even assuming that Malloy could discredit two of defendants' several reasons for terminating her employment, she does not point to any evidence that would permit the inference that she was terminated *because of* her reports to the U.S. DOL. Consequently, a reasonable inference cannot be drawn that the real reason for her termination was retaliation. *King*, 39 F.4th at 987.

Because defendants offered evidence of legitimate, nonretaliatory reasons for Malloy's termination, and Malloy presented no evidence from which a jury could conclude that the proffered reasons were pretextual, defendants are entitled to summary judgment on Malloy's FLSA claim of retaliation relating to her call(s) to the U.S. DOL regarding Trileaf's exempt classification of its employees. As defendants lawfully terminated Malloy's employment for legitimate, nonretaliatory

reasons that existed and of which they were aware on July 25, 2023, when they terminated her employment, I need not consider defendants' additional argument that after-acquired evidence of Malloy's misconduct justified her termination.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Joint Motion for Summary Judgment on Count II [52] is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants' Joint Motion for Partial Summary Judgment on Damages for Count II [58] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that defendant T. Scott Muschany's Motion for Summary Judgment on Count III and IV [55] is **GRANTED.**

An appropriate Judgment is entered separately this date.

Defendants' Motion for Sanctions Based on Plaintiff's Discovery Misconduct (ECF 68) remains pending.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of January, 2026.