UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEBORAH MALLOY,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )          No. 4:24 CV 506 CDP
                                   )
TRILEAF CORPORATION, et al.,       )
                                   )
          Defendants.              )

## MEMORANDUM AND ORDER

After I granted defendants summary judgment, they timely filed a bill of costs requesting that $19,807.14 in recoverable costs be taxed against plaintiff, Deborah Malloy.   As Malloy concedes that there is no basis to challenge defendants' claimed costs, I will direct the Clerk of Court to tax the costs set out in defendants' bill.

In a separate Memorandum and Order, I also granted defendants' motion for sanctions for Malloy's misconduct committed during the discovery process, and I determined to assess defendants' reasonable attorney's fees against Malloy and her attorney, Matthew Ghio, as a remedial sanction.   (ECF 91, Memo. & Ord., Jan. 14, 2026.)   I therefore directed defendants to file a verified statement of attorney's fees they reasonably incurred on account of Malloy's misconduct.   In her amended declaration and statement of fees, defendants' counsel, Joy D. McMillen, requests $54,475.50 in fees representing 106.5 hours of the defense team's work

that she declares were necessitated solely because of Malloy's discovery misconduct.   Malloy objects to the requested fees.

At the outset, I again reject Malloy's argument that her discovery misconduct was not serious, as I again reject her argument that defendants conducted excessive discovery because they were attempting to "punish" her through the discovery process.   Instead, this is a case where an employee (who was the Director of Human Resources) was fired for legitimate reasons, including improper handling of protected employee information and lying about it.   Shortly after deciding to fire Malloy, defendants discovered extensive additional misconduct, including that she had emailed company personnel documents to her home email, that she failed to properly handle security notices when employees left, and that she had cancelled her own and her daughter's background checks. Malloy argues that because defendants already knew of this "after-acquired" evidence before she sued them, and because defendants had obtained a state court order compelling her to return company property, defendants should not have undertaken thorough discovery in this litigation.

In addition to simply being wrong, Malloy's argument that defendants' discovery was needlessly thorough ignores the seriousness of her now-abandoned allegations of false imprisonment against defendant T. Scott Muschany, the CEO and president of defendant Trileaf Corporation.   Malloy's complaint alleged that Muschany had restrained her in his locked office on more than three dozen

- 2 -

occasions, during which time he intimidated and berated her.   In response to defendants' motion for summary judgment, however, Malloy conceded that defendants were entitled to summary judgment on that claim.[1]

The allegations in the complaint, coupled with defendants' knowledge of Malloy's dishonesty during her employment, gave defendants ample reason to seriously question and attempt to verify Malloy's discovery responses.   As it turned out, many of those discovery responses were also false and misleading; and it is for that reason, as I previously ordered, that sanctions are appropriate.

Of course, as I explained in my Order granting sanctions, this sanctions award is for misconduct during discovery in this litigation and not for Malloy's pre-suit behavior.   I will, therefore, reduce somewhat defendants' claim for attorney's fees because it is not clear to me that all of the claimed fees were incurred solely because of Malloy's misconduct during discovery.   For the reasons that follow, instead of painstakingly reviewing the entries to parse between fees that are permitted and those that are not, or directing defendants to provide more detail in another amended statement (and thus incur even more attorney's fees), I will apply a one-quarter reduction to the requested fees.

---

[1] Malloy says she made this concession because she realized the claim was barred by Missouri's Worker's Compensation Law, citing *Brock v. Dunne*, 637 S.W.3d 22 (Mo. banc 2021).   (ECF 80, Pltf.'s Resp. to Deft.'s Sum. Judg. Mot. on Cts. III and IV.)   But as I ruled earlier in this case, *Brock* did not hold that intentional torts such as false imprisonment were barred by the Worker's Compensation Law.   (ECF 16, Memo. & Ord. at pp. 5-7.)

**Discussion**

A district court has wide discretion in determining the proper amount of reasonable attorney's fees to be awarded in a case where a party has been sanctioned.  *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1094 (8th Cir. 2012).   In evaluating whether a fee award is reasonable, courts begin with the lodestar, "which is calculated by multiplying the hours reasonably expended by the reasonable hourly rates."  *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 93 F.4th 408, 420 (8th Cir. 2024); *Indep. Contractors of Maverick Transp., LLC v. Great W. Cas. Co.*, No. 4:24-CV-338 HEA, 2025 WL 1423598, at *2 (E.D. Mo. May 16, 2025).

Here, Malloy does not challenge the hourly rates charged by attorney McMillen and the rest of the defense team, which comprises a member of the Lewis Rice law firm, two associate attorneys, and a paralegal.[2]   Based on my general familiarity with rates charged by attorneys in St. Louis and my experience in fee disputes, I find that the rates charged by defense counsel and legal staff in this case are reasonable and well in line with rates charged by other attorneys in St. Louis for similar services.

I view the reasonableness of hours expended through the lens in which I determined that assessing attorney's fees was warranted, that is, as a remedial

---

[2] McMillen and the Lewis Rice member billed at $550/hour; the associate attorneys billed at $395/hour; and the paralegal billed at $280/hour.

award for sanctionable misconduct.   Therefore, to constitute the basis for that remedial award, the claimed hours must have been expended solely because of Malloy's unethical behavior.   (*See* ECF 91, Memo. & Ord.)   On the information before the Court, it is unclear whether all the claimed hours meet that criterion.

I have carefully reviewed the file and the evidence and argument submitted on defendants' motion for sanctions, and it appears that the earliest date that defendants could have discovered that Malloy provided false and misleading information under oath – which they claim triggered their need to further investigate – was November 21, 2024, when Malloy answered defendants' first interrogatories and request for production.   It thus appears that the claimed hours that predated November 21, 2024, were part of defendants' general course of discovery and not expended solely because of Malloy's discovery misconduct.

That timeline also causes me to question whether all the claimed hours related to Malloy's Social Security authorization form were expended solely because of Malloy's discovery misconduct.   In their motion for sanctions, defendants averred that they sought SSA records "after Plaintiff disclosed in written discovery answers that she had not filed any tax returns since 2020, and produced only two W-2 statements from any employer other than Trileaf."   (ECF 69 at p. 1.)   But a review of the file shows that defendants requested the SSA authorization from Malloy on November 4, 2024, which was 17 days before Malloy answered any discovery.   (*See* ECF 69-4, Defts.' Third Req. for Prod.)

Indeed, in their motion to compel filed November 19, 2024, defendants argued that as of that date, "Plaintiff has still not provided any answers responses [sic] to Defendants' First Written Discovery.   Likewise, Plaintiff has not yet produced a single responsive document in discovery."   (ECF 23 at ¶ 15.)   It appears, therefore, that the SSA authorization request directed to Malloy on November 4, 2024, was part of general discovery practice, and that defendants' follow-up with Malloy's counsel in December 2024 regarding the form's late production was likely part of that general course of discovery and not necessitated *solely* because of misconduct.   And I cannot conclude that the wrong birthdate and false declaration on the SSA form caused that December 2024 work because defendants did not become aware of those falsehoods until late April 2025.   (ECF 69 at p. 1.)

The examples set out above leave me with uncertainty as to whether all the hours defendants claim for attorney's fees as a remedial sanction meet the requirement that they be "incurred and caused solely because of Malloy's false and misleading answers to interrogatories and deposition testimony" regarding certain specified matters, "and by the provision of incorrect information on Social Security Administration form SSA-7050-F4 (11-2022), signed under penalty of perjury on December 16, 2024."   (ECF 91, Memo. & Ord. at p. 7.)

There is no doubt that the majority of defendants' claimed fees directly relate to and were caused by Malloy's discovery misconduct.   For example, Malloy provided employment and earnings information in answers to

interrogatories which defendants quickly determined was inconsistent with information that Malloy provided in more than one bankruptcy filing.  (*See* ECF 69, Defts.' Memo. in Supp. of Mot. Sancs. at pp. 3-4.)   When defendants investigated the discovery responses further, they determined that Malloy had provided them – as well as others – with fabricated letters of recommendation. (*Id.* at pp. 4-5.)   Further investigation revealed that Malloy had lied, both in her interrogatory answers and her deposition, about her educational background.   (*Id.* at p. 7.)   Because of these lies and others, defendants very reasonably saw the need to conduct third-party discovery and additional investigation into her background.

Malloy argues that defendants' continued investigation was not needed because, even without it, defendants would have been able to limit Malloy's damages because of the after-acquired evidence they already had.   But Malloy's credibility would have been a central issue at trial.   It was therefore appropriate for defendants to investigate her false statements during discovery to determine the truth and to prepare for challenging her credibility, and not just for the purpose of challenging Malloy's amount of claimed damages.   Nevertheless, some of the fee-statement's time entries – such as follow-up communications with Malloy's counsel regarding late or missing discovery responses – do not appear to be directly caused by Malloy's discovery misconduct.

Where inadequate or unclear documentation hinders a court's ability to

- 7 -

conduct a meaningful review for an award of reasonable attorney's fees, the court may apply a percentage reduction to the requested fees.  *Miller v. Woodharbor Molding & Millworks, Inc.,* 174 F.3d 948, 949-50 (8th Cir. 1999) (per curiam) (remanding to district court to request more detail or apply percentage reduction based on vague billing entries); s*ee also Axiom Prod. Admin., Inc. v. O'Brien,* No. 4:20-CV-01333-MTS, 2024 WL 1655389, at *5 (E.D. Mo. Apr. 17, 2024) (reducing requested fees by 30 percent because the specific amount of time "actually devoted to enforcing rights under the contract is still unclear. . . . [I]t is not the duty of the Court to tirelessly review the time entries provided in support of Plaintiff's attorneys' fees to determine what amount was actually incurred in enforcing the contract claims.").

Given the timing discrepancies in defendants' request for fees, it remains unclear whether all the fees they claim were incurred "solely because of Malloy's false and misleading answers to interrogatories and deposition testimony" and untruthful information on the SSA form.   I will therefore reduce the requested lodestar amount by one-quarter and assess attorney's fees as a remedial sanction in the amount of $40,856.63 against Malloy and her attorney, Matthew Ghio, jointly and severally.

For the reasons set out in my Memorandum and Order granting sanctions (ECF 91), I reject Malloy's request that I award only $1000 as sanctions as well as her argument against a fee award in general.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall tax the costs as set out in defendants' bill of costs [92].

**IT IS FURTHER ORDERED** that defendants Trileaf Corporation and T. Scott Muschany shall recover attorney's fees in the amount of $40,856.63 as a remedial sanction from plaintiff Deborah Malloy and her attorney, Matthew Ghio, jointly and severally.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of March, 2026.